**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-1116-16T3
                   A-3902-16T3

PIO, a/k/a PETER TARQUINIO,

       Plaintiff-Respondent/
       Cross-Appellant,

v.

CLAUDIO TARQUINIO; TAMMY TARQUINIO;
EVEX, INC.; EVEX ANALYTICAL
INSTRUMENTS, INC.; 2486 ROUTE 206,
LLC; CTTK, LLC; and EVEXGLOBAL, LLC,

       Defendants-Appellants/
       Cross-Respondents.

_____

PETER TARQUINIO,

       Plaintiff-Respondent,

v.

CLAUDIO TARQUINIO; EVEX, INC.;
EVEX ANALYTICAL INSTRUMENTS, INC.;
and 2486 ROUTE 206, LLC;

       Defendants,
and

TAMMY TARQUINIO; CTTK, LLC;
and EVEXGLOBAL, LLC,

> Defendants-Appellants.

_____

Argued September 12, 2018 – Decided September 19, 2018

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012069-11.

Daniel L. Grossman argued the cause for appellants/cross-respondents (in A-1116-16).

Douglas A. Stevinson argued the cause for respondent/cross-appellant (in A-1116-16) and respondent (in A-3902-16) (Windels Marx Lane & Mittendorf, LLP, attorneys; Douglas A. Stevinson, on the brief).

Russell M. Woods argued the cause for appellants (in A-3902-16)(Bramnick Rodriguez Grabas Arnold & Mangan, LLC, attorneys; Russell M. Woods, on the brief).

PER CURIAM

In these appeals, calendared back to back and consolidated for purposes

of this opinion, defendants Claudio Tarquinio (Claudio);[1] Tammy Tarquinio

---

[1] Several of the parties share the same surname. To avoid confusion, we refer to defendants Claudio and Tammy Tarquinio by their first names. In doing so, we intend no disrespect.

(Tammy); Evex, Inc.; Evex Analytical Instruments, Inc.; 2486 Route 206, LLC; CTTK, LLC; and EvexGlobal, LLC, appeal from the March 10, 2017 Chancery Division judgment entered in favor of plaintiff Pio a/k/a Peter Tarquinio (plaintiff) in this long-running litigation involving businesses owned and operated by plaintiff, Claudio, and Tammy. Plaintiff has filed a cross-appeal from a portion of that same judgment. In her separate appeal, Tammy challenges an April 10, 2017 order directing her to pay plaintiff counsel fees and other costs, after she failed to appear at a post-judgment deposition scheduled in connection with plaintiff's efforts to enforce the judgment. We affirm.

I.

The history of this litigation and the facts relevant to this appeal are set forth at length in the comprehensive and detailed seventy-five-page written opinion rendered by Judge Margaret Goodzeit on September 27, 2016, and need not be repeated at length here. Plaintiff and Claudio are brothers, who went into business together in 1994 by incorporating a company known as Evex Analytical Instruments, Inc. (EAI). Plaintiff and Claudio's wife Tammy were named as directors of the corporation and both brothers served as the company's officers. In 2000, the brothers formed a second company called Evex, Inc. (Evex, known collectively with EAI as the Evex Companies). While operating these

businesses, the brothers invented, developed, and sold various types of microscopes and related devices and equipment to the government, educational institutions, scientific entities, and manufacturers. The companies were very successful.[2]

In 2011, plaintiff became engaged to his future wife. Claudio and other members of the Tarquinio family did not approve of this relationship. Thereafter, Claudio and Tammy took a series of steps against plaintiff to freeze him out of the business. Among other things, Claudio directed the banks used by the Evex Companies to remove plaintiff from all of the business accounts; changed online banking passwords; removed plaintiff from the company's business line of credit, even though plaintiff had personally guaranteed the loan; and created new accounts in which he deposited the Evex Companies' profits. Claudio also removed $95,000 from a bank account held by 2486 Route 206,

---

[2] The brothers also formed an entity named 2486 Route 206, LLC, which owned property at that location. The parties' operating agreement stated that plaintiff and Claudio were 50% owners of this entity and were to share all profits and losses as they did with the Evex Companies.

A-1116-16T3

LLC;[3] told customers that plaintiff had left the businesses; fired plaintiff's sales staff; and directed all remaining employees not to communicate with plaintiff.

In May 2011, plaintiff filed a complaint against Claudio, seeking to restrain him from continuing to operate the businesses without his input, and to account for all of the brothers' assets.[4] Despite the court's issuance of a temporary restraining order against him, and the parties' agreement to a consent order specifying how the businesses should be conducted during the pendency of the lawsuit, Claudio continued to interfere with plaintiff's rights. He removed additional funds from the companies, and prevented plaintiff from accessing business records.

In May 2012, the court appointed a Special Fiscal Agent (SFA) to take control of the businesses. Claudio refused to comply with any of the SFA's directives, including orders to provide business records for review. The court issued several orders imposing sanctions upon Claudio for his recalcitrance. In 2013, plaintiff learned that Claudio and Tammy had created a similarly-named

---

[3] After litigation commenced between the brothers, plaintiff alleged that Claudio created CTTK, LLC and improperly transferred the title to the property owned by 2486 Route 206, LLC to that company.

[4] As the litigation progressed, plaintiff amended the complaint to add Tammy and the brothers' businesses as defendants, and he made additional claims and requests for relief.

company, EvexGlobal, LLC, which began to sell the Evex Companies' products through that entity to the brothers' former customers.

Claudio next filed a motion for summary judgment in which he alleged that Tammy was the sole owner of the Evex Companies, and that plaintiff had no ownership interest at all. Plaintiff filed a cross-motion for summary judgment, and asserted that he and his brother each owned 50% of the business. On September 27, 2013, Judge Edward M. Coleman granted plaintiff's motion and concluded, in a thorough written opinion, "that there are no genuine issues of material fact to refute that Claudio Tarquinio and Peter Tarquinio are each 50% owners of both EAI and Evex, Inc."

Thereafter, Claudio, Tammy, and the other defendants failed to provide discovery to plaintiff despite the court's repeated orders requiring them to do so. On May 8, 2015, the court suppressed defendants' pleadings and counterclaims without prejudice pursuant to Rule 4:23-5(a)(1).

Over the next six months, defendants failed to move to reinstate their pleadings and did not provide the outstanding discovery to plaintiff. Accordingly, plaintiff filed a motion for summary judgment, and included a request that defendants' pleadings now be suppressed with prejudice as permitted by Rule 4:23-5(a)(2). On January 25, 2016, Judge Thomas C. Miller

6

granted plaintiff's motion to suppress defendants' responsive pleadings for failure to provide discovery, and delivered an extensive written opinion fully explaining his reasons for directing this relief.

With defendants' answer and counterclaims suppressed, the matter moved to the proof hearing. On April 21, 2016, Judge Goodzeit issued an order and accompanying seventeen-page written decision setting forth the procedures to be followed at the hearing. After conducting a five-day hearing, the judge rendered her comprehensive written decision on September 27, 2016, and set forth detailed findings of fact and conclusions of law on all of the matters at issue between the parties.

Judge Goodzeit granted plaintiff $1,605,258.68 in compensatory damages, and an additional $1.6 million in punitive damages. In awarding these damages to plaintiff, the judge considered, but rejected, his request for certain "alternative remedies, such as provision of a constructive trust, equitable subrogation and/or the imposition of an equitable lien in connection" with certain properties owned by defendants. As was the case with all of the judges involved in shepherding this matter to its conclusion, Judge Goodzeit fully explained her rationale for rejecting plaintiff's claim in her written decision.

A-1116-16T3

Judge Goodzeit further restrained defendants "from transferring, dissipating, and/or encumbering Claudio and Tammy Tarquinio's interests in, and the assets owned by," the business entities involved in this case, and made provision for the dissolution of the brothers' companies. The judge also granted plaintiff's request for counsel fees and costs. However, she issued the September 27, 2016 order without first determining the amount of those fees in order to ensure that Claudio, Tammy, and the other defendants did not continue to hide and deplete their assets before plaintiff's attorney could submit an affidavit of services.

Tammy was mistakenly not included in the paragraph of the September 27, 2016 order directing the payment of compensatory and punitive damages to plaintiff. On October 14, 2016, Judge Goodzeit entered an amended judgment that stated that Tammy was jointly and severally liable with Claudio and the other defendants for the judgment.

On November 15, 2016, Judge Goodzeit entered a judgment ordering defendants to pay plaintiff $356,063.17 in counsel fees and costs. Unbeknownst to the court or plaintiff, however, Claudio had filed for bankruptcy after the entry of the September 27, 2016 judgment. Therefore, the judge entered an amended order on December 5, 2016 to remove Claudio from the November 15

order. After the bankruptcy court lifted the automatic stay engendered by Claudio's bankruptcy filing, the judge entered the March 10, 2017 order that again made Claudio jointly and severally liable for the fees.

One other procedural matter must be addressed at this juncture. On November 17, 2016, defendants filed a notice of appeal from the court's October 14, 2016 judgment. As discussed above, the issue of counsel fees had not been finalized at that time and, accordingly, our clerk's office asked the parties to address whether the October 14 order was final or interlocutory for purposes of appeal. While the parties were responding to this inquiry, plaintiff proceeded in the Chancery Division as permitted by Rule 2:9-1(a) to enforce the October 14, 2016 judgment, and obtained a discovery order on December 15, 2016 against all defendants other than Claudio, requiring them to produce documents and appear for a deposition on January 4, 2017.

On that date, Tammy failed to appear for her scheduled deposition, and plaintiff had to pay $159.60 to the court reporter. Tammy then filed a motion to stay discovery until the appellate clerk's office determined whether defendants' appeal could proceed as a direct appeal or whether they were required to file a motion for leave to appeal. Plaintiff responded to the stay motion by providing notice to Tammy that her motion was frivolous under Rule

1:4-8 because regardless of how the appeal from the November 14, 2016 order thereafter proceeded, he was permitted to enforce that order and take discovery to assist him in doing so. When Tammy refused to withdraw her pleading, plaintiff filed a motion to enforce the December 15, 2016 discovery order.

Defendants thereafter filed an amended notice of appeal from the March 10, 2017 judgment.[5] Tammy then withdrew her motion for a stay of discovery. On March 24, 2017, Judge Goodzeit granted plaintiff's motion to enforce the discovery order and required Tammy to appear for a deposition on April 27, 2017. The judge also ordered Tammy to pay plaintiff's counsel fees and costs in connection with the motion. After reviewing the attorney's certification of services, Judge Goodzeit entered an order on April 10, 2017, granting plaintiff $1836 in counsel fees and costs, and directing defendants to also reimburse plaintiff $159.60 for the court reporter. Tammy then filed a notice of appeal from this order.

II.

Defendants raise three issues in their appeal from the March 10, 2017 judgment. They assert that: (1) Judge Miller erred in dismissing their pleadings

---

[5] On March 23, 2017, plaintiff filed his cross-appeal from the March 10, 2017 judgment.

with prejudice; (2) Judge Coleman incorrectly granted plaintiff summary judgment on the issue of whether he and Claudio each owned 50% of the Evex Companies; and (3) Judge Goodzeit did not properly conduct the proof hearing and should not have included punitive damages in her award of damages to plaintiff.

Having considered defendants' contentions in light of the record and applicable law, we conclude they are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). We therefore affirm substantially for the reasons stated by the three judges in their respective written opinions addressing defendants' arguments. We add the following comments.

### A.

In Point I, defendants argue that Judge Miller erred in suppressing their responsive pleadings with prejudice in his January 25, 2016 order and decision. In making this argument, defendants do not seriously dispute that they failed to respond to plaintiff's discovery requests, were sanctioned for this failure, and, on May 8, 2015, had their pleadings suppressed without prejudice under Rule 4:23-5(a)(1). Instead, they assert that the judge should not have considered plaintiff's request to suppress their pleadings with prejudice pursuant to Rule

11

4:23-5(a)(2) after they failed to correct their discovery deficiencies because plaintiff allegedly did not provide them with notice of his dismissal request.

Defendants made this identical argument to Judge Miller, who found their "claim of ignorance to be disingenuous." We agree.

"A trial court has inherent discretionary power to impose sanctions for failure to make discovery, subject only to the requirement that they be just and reasonable in the circumstances." Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 513 (1995). A decision to impose discovery sanctions is reviewed under the abuse of discretion standard. Id. at 517. Applying this standard, we discern no basis for disturbing Judge Miller's decision, and we adopt the reasoning he set forth in his comprehensive decision of January 25, 2016.

Defendants correctly point out that plaintiff filed a motion for summary judgment and this was the only relief specifically requested on the face of the motion. However, plaintiff's motion was inextricably tied into their request that the court suppress defendants' pleadings because they failed to provide discovery. That request, as Judge Miller found, was plainly stated in plaintiff's motion brief. Indeed, plaintiff argued in a separate point heading in that brief that defendants' "responsive pleading should be dismissed with prejudice under [Rule] 4:23-5(b) due to their failure to provide outstanding discovery."

12

Plaintiff's brief concluded by asking "that the [c]ourt grant his motion for summary judgment in full by dismissing with prejudice all remaining counterclaims asserted by Claudio and Tammy Tarquinio <u>both due to their failure to provide the outstanding discovery and on the merits.</u>"

In addition, plaintiff included this requested relief in the draft order accompanying his motion, and Judge Miller addressed this request in a written "tentative decision" he provided to the parties in advance of oral argument on the motion. Even though defendants' attorney argued that he did not notice any of these references to plaintiff's request prior to the oral argument, he never asked for an adjournment to give him time to address the matter. And, as stated above, defendants have never provided the full discovery plaintiff sought for months during the pendency of this litigation, and never made a motion to reinstate their pleadings.

Under these circumstances, we conclude that defendants had ample notice of plaintiff's request to dismiss their responsive pleadings with prejudice, and in light of defendants' continued non-compliance, Judge Miller did not abuse his discretion by granting this motion.

B.

13

In Point II, defendants argue that Judge Coleman erred by granting plaintiff partial summary judgment in his September 27, 2013 written decision and order, and determining that plaintiff and Claudio were "each 50% owners of both EAI and Evex, Inc.[,]" the Evex Companies. Again, we disagree.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court, namely, the standard set forth in Rule 4:46-2(c). Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as Judge Coleman did, whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998)). We accord no deference to the trial judge's conclusions on issues of law and review issues of law de novo. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

14

Having considered plaintiff's contentions in light of the record and applicable legal principles, we are satisfied that Judge Coleman properly granted partial summary judgment to plaintiff on the question of whether he and Claudio each owned 50% of the Evex Companies. Defendants raise the same arguments in Point II that they unsuccessfully raised before Judge Coleman, and we affirm substantially for the reasons expressed in the judge's detailed September 27, 2013 written opinion.

All of the competent documentary evidence submitted by the parties supports the judge's conclusion that the brothers were joint owners of their companies. Plaintiff and Claudio filed tax returns listing themselves as each owning 50% of the businesses, and they obtained insurance indicating they were equal partners in these entities. Claudio even submitted a certification earlier in the litigation admitting that he and his brother shared the profits of the businesses. The SFA reviewed the available books and records and also "concluded that the businesses are properly characterized as belonging 50% to [plaintiff] and 50% to Claudio, and as such, [the SFA] directed that amended tax returns for 2007 to 2012 be prepared to reflect such."

In response, defendants assert that plaintiff had no ownership interest in the companies because Tammy issued herself all of the shares of stock in the

businesses after an alleged director's meeting attended only by herself and Claudio. They also claim that Tammy sent a memo to plaintiff terminating him from the companies.

However, Judge Coleman properly rejected both arguments. As stated earlier, plaintiff and Tammy were the two directors for the companies. Under N.J.S.A. 14A:6-7.1(3), corporations like the Evex Companies can only act on a matter if a quorum is present. Thus, the unilateral actions allegedly taken by Tammy were of no legal force or effect because plaintiff's presence was required to establish a quorum. Thus, defendants' claims fail as a matter of law.

Defendants also allege there was a dispute of facts preventing summary judgment because plaintiff once sent a letter to his attorney disavowing a stake in the Evex Companies as a means of avoiding personal liability in a dispute between Citicorp and the companies over a domain name. However, plaintiff never resigned from the companies and, as stated above, could not take unilateral action to do so.

Claudio and Tammy each filed certifications, claiming that plaintiff was not a 50% owner, and obtained certifications from the brothers' mother, and their sister's boyfriend stating that they heard Peter say that Tammy was the sole owner of the companies. Judge Coleman properly rejected these certifications,

16

not because he found them to lack credibility, but because the documentary evidence was "so one-sided" that it left no room for doubt as to the fact the brothers each owned 50% of the companies they started together. Brill, 142 N.J. at 523. Therefore, we affirm Judge Coleman's reasoned determination on the issue of plaintiff's and Claudio's ownership of the Evex Companies.

C.

Defendants argue in Point III that "the result of the proof hearing was unjust" because Judge Goodzeit did not give them a sufficient opportunity to participate at that proceeding. This argument also fails.

Judge Goodzeit provided a full description of the governing law in her April 21, 2016 written decision establishing the parameters for the proof hearing, and there is no need to repeat that detailed discussion here. As the judge noted, while defaulted defendants may engage in cross-examination, they "may not admit independent evidence, offer [their] own liability witnesses, or admit independent documents at the proof hearing, unless the [c]ourt, in its discretion, deems otherwise."

Judge Goodzeit followed this principle by permitting defendants to cross-examine witnesses at the proof hearing, while barring them from presenting evidence of their own, including evidence which they failed to produce in

response to plaintiff's repeated discovery requests. The judge explained the basis for her decision as follows:

> In light of the dismissal of defendant[s'] pleadings, with prejudice, for their continued failure to provide discovery, the [c]ourt finds that there is no reason to depart from the sanctions imposed upon similarly situated defendants. Defendants by their actions, have forfeited their rights to present any direct evidence in support of their case and are not permitted to make opening or closing statements.

Judge Goodzeit did not abuse her discretion in establishing the procedures to be followed at the proof hearing and, therefore, we affirm her determination.

Defendants argue that Judge Goodzeit should not have considered the imposition of punitive damages in this case. We disagree.

In her September 27, 2016 written decision, Judge Goodzeit made detailed findings of fact and conclusions of law on the question of punitive damages. As the judge noted, in order to receive punitive damages, a plaintiff must show through "clear and convincing evidence" that any "harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a).

After applying this test, Judge Goodzeit properly found that "it could not be more clear that Claudio was well aware that serious harm would arise from his conduct inasmuch as he removed, entirely, [plaintiff's] value in the Evex Companies by virtue of all of the conduct which" the judge summarized in her seventy-five-page decision. The judge also correctly found that there was "clear and convincing evidence that Claudio was aware that serious harm would be caused" to plaintiff. "Indeed, Claudio's and Tammy's conduct wantonly and recklessly harmed" plaintiff because Claudio and Tammy "violated their fiduciary duties to" plaintiff, "defrauded him, converted assets and oppressed" him. In addition, the judge found that Claudio "went to great lengths to hide this conduct" from plaintiff and the SFA, and "then failed to comply with discovery demands and [o]rders[.]" Therefore, the judge properly granted punitive damages to plaintiff.

In sum, Judge Goodzeit's findings and conclusions are fully supported by the record developed at the proof hearing. Because we discern no basis for disturbing them, we affirm the March 10, 2017 order that resulted from the judge's September 27, 2016 order and decision.

III.

19

In his cross-appeal, plaintiff argues that Judge Goodzeit erred in her September 27, 2016 decision by declining to impose a constructive trust on certain property in Surf City, and an equitable lien or "equitable subordination" over another parcel of property known as the "857 State Road property." Judge Goodzeit denied plaintiff's request and fully explained her reasons for doing so in her exhaustive opinion. We affirm her determination substantially for the reasons set forth in that opinion and provide the following brief comments.

As to the 857 State Road property, Claudio took money from the Evex Companies and used it to pay off the only mortgage on this property, which he owned. As the judge explained, a court may apply the doctrine of equitable subordination to "re-order lien priority by inserting a third-party lender into the shoes of the lien holder whose debts its loan was to pay off." Because Claudio paid off the bank debt, there was "no other debt which need[ed] to be subrogated, and no priority issue." We agree with the judge that, under these circumstances, equitable subordination was not appropriate.

Judge Goodzeit also declined to impose a constructive trust or equitable lien over either property because plaintiff had "other remedies to [recover] the inappropriately acquired funds" that Claudio put into the two properties. Those remedies were fully detailed in her written decision. We discern no basis for

20

questioning the exercise of the judge's discretion on this issue and, therefore, we reject plaintiff's contentions on this point.

## IV.

We now turn to Tammy's appeal from Judge Goodzeit's April 10, 2017 order, imposing frivolous litigation sanctions against her under N.J.S.A. 2A:15-59.1 for her motion for a stay of discovery because of a question our clerk's office raised about whether the October 14, 2016 was a final determination appealable as of right, or an interlocutory order requiring the filing of a motion for leave to appeal. We reject Tammy's contentions on this point and affirm substantially for the reasons set forth in Judge Goodzeit's March 24, 2017 written decision. We add the following comments.

A trial judge's decision whether to award sanctions under Rule 1:4-8 for frivolous litigation is reviewed for abuse of discretion. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div. 2011). Reversal is warranted "only if [the trial judge's decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Id. at 498 (quoting Mason v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Here, there was simply no basis for Tammy's motion on the only grounds she asserted in support of it. Tammy did not file a motion for a stay of the October 14, 2016 judgment itself with the Chancery Division or this court. Instead, she failed to appear at a required post-judgment discovery deposition, and then asserted that the discovery should be stayed because of the question raised about the finality of the October 14 judgment. However, the resolution of that question had no impact whatsoever on the trial court's ongoing jurisdiction under Rule 2:9-1(a) to enforce that judgment by ordering Tammy to participate in post-judgment discovery.

Plaintiff's attorney sent a letter to Tammy's counsel pointing this out and demanding that the motion be withdrawn. However, Tammy refused to do so, continued to avoid her discovery responsibilities, and forced plaintiff to expend further counsel fees to enforce the court's December 15, 2016 discovery order. Under these circumstances, Judge Goodzeit properly exercised her discretion to impose reasonable sanctions upon Tammy by ordering her to pay plaintiff $1836 in counsel fees and costs, together with $159.60 for the court reporter for the deposition Tammy did not attend.

As was the case with all of her prior orders in this case, Judge Goodzeit fully explained the reasons for her decision. The judge stated:

22

The [c]ourt finds that defendants' motion was frivolously pursued as to cause delay and to thwart [plaintiff's] post-judgment rights. While the defendants were served with the Order of Discovery on December [15,] 2016, they nevertheless waited until January 4, 2016 –- the day the deposition was to be held –- to file their motion with the [c]ourt seeking to stay all enforcement proceedings as to all defendants. Because of the extremely late notice, plaintiff incurred fees in the amount of $159.60 for the court reporter's attendance. Even after receiving plaintiff's frivolous litigation letter, defendants continued to pursue their position that the entirety of the enforcement proceedings as to all defendants were to be stayed because the Appellate Division questioned the finality of certain judgments entered by this [c]ourt.

Above all, the [c]ourt rejects defendants' contention that their motion was filed for any other purpose than to delay enforcement proceedings; particularly their assertion that such motion was necessary to resolve the "sea of confusion" as to the finality of the [c]ourt's underlying judgments against the defendants. This [c]ourt's inherent jurisdiction to permit discovery related to enforcement of its [o]rder would not have been stayed in any way by the filing of a motion for leave to appeal or a notice of appeal, unless this [c]ourt or the appellate court grants such a stay. See R. 2:9-5(a).

. . . .

More importantly, however, defendants' alleged confusion with respect to the [c]ourt's underlying judgments' finality in no way impaired [plaintiff's] ability to pursue the remaining defendants through enforcement proceedings. See R. 2:9-1. As a result, the [c]ourt finds that defendants' motion lacked any

23

basis whether in law or in fact, and was frivolously pursued on the eve of their [c]ourt-ordered] deposition to cause delay and frustrate [plaintiff's] enforcement rights.

We agree with the judge's cogent analysis of this issue. Therefore, we affirm the April 10, 2017 order in all respects.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1116-16T3